NOT DESIGNATED FOR PUBLICATION

No. 111,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICHARD D. MILTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed October 30, 2015. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., GREEN, J., and JEFFREY GOERING, District Judge, assigned.


*Per Curiam*:  Richard Milton appeals the trial court's dismissal of his K.S.A. 60-1507 motion as time barred. On appeal, Milton asserts that the trial court erred in dismissing his motion because he established that it would be manifestly unjust not to extend the time limitation under K.S.A. 60-1507(f)(1)(i). As discussed below, however, Milton's arguments are conclusory. Moreover, under the totality of the circumstances of his case, Milton fails to prove that it would be manifestly unjust not to extend the time limitation. Consequently, we affirm the trial court's dismissal of Milton's K.S.A. 60-1507 motion.

1

In Milton's direct appeal, *State v. Milton*, No. 99,584, 2010 WL 5139871, at *1 (Kan. App. 2010) (unpublished opinion), *rev. denied* 291 Kan. 916 (2011), this court stated the facts leading up to Milton's arrest as follows:

> "Richard and [A.M.M.] were married in 1989. Their daughter, J.M., was born in 1991. In the fall of 2003, [A.M.M.] left Milton. After 1 or 2 weeks of living with [A.M.M.], J.M. returned to live with her father. In January 2005, however, J.M. moved back with [A.M.M.]. On May 10, 2006, J.M. told [A.M.M.] that Milton had raped her. The next day, J.M. and [A.M.M.] went to the Bonner Springs police station and reported the rape to Detective Victoria Fogarty. J.M. told Fogarty about two other victims, E.H. and O.W., who were friends with J.M. E.H. was born in 1992 and O.W. was born in 1990. All three girls were subsequently interviewed at Sunflower House and confirmed that Milton had molested them.

> "On June 14, 2006, at approximately 9 p.m., Fogarty interviewed Milton at the Bonner Springs police station. Prior to the interview, Fogarty instructed Milton as to his rights and Milton signed a written waiver. The interview was tape recorded. Milton admitted to having sex multiple times with J.M., admitted to touching O.W.'s genitals, and said that E.H. had tried to have sex with him. After the interview, Milton was arrested and transported to the Wyandotte County detention center."

On June 19, 2006, the State charged Milton with four counts of rape of J.M and three counts of rape of E.H., each severity level 1 person felonies in violation of K.S.A. 2005 Supp. 21-3502 and two counts of aggravated indecent liberties with E.H and one count of aggravated indecent liberties with O.W., each severity level 3 person felonies in violation of K.S.A. 21-3504 (Furse). Later, the State filed an amended information, charging Milton with four counts of rape of J.M., one count of rape of E.H., two counts of aggravated indecent liberties with E.H, one count of aggravated indecent liberties with O.W., and two counts of aggravated criminal sodomy of J.M., which is a severity level 2 person felony in violation of K.S.A. 21-3506 (Furse).

2

On June 30, 2006, the trial court appointed Charles Lamb to represent Milton. On January 23, 2007, however, Milton moved to have Lamb withdraw as counsel. The trial court granted this motion and appointed Daniel Cahill to represent Milton on April 11, 2007.

Milton's jury trial took place between May 21, 2007, and May 24, 2007. At Milton's trial, the State presented testimony from O.W., E.H., J.M., the Sunflower House employees who interviewed the three girls, the police officers who had interviewed the three girls and Milton, and A.M.M. The State additionally admitted into evidence Milton's recorded police interview and a letter Milton had written to A.M.M. in which he confessed to having sex with J.M. and E.H. and touching O.W. After the State rested, Milton moved to have one count of aggravated indecent liberties with E.H. dismissed. The trial court granted this motion because the State had failed to present any evidence supporting this charge.

Milton's defense was built on undermining the State's witnesses' testimony by pointing out inconsistent testimony and credibility issues. Although Milton initially planned on testifying, he ultimately decided not to testify. Only one witness, Deanna Connor, testified on behalf of Milton. Connor had lived with Milton for 2 months. Connor testified that she never witnessed anything inappropriate between Milton and the three girls. Milton also admitted lab results showing that J.M. has Human Papillomavirus (HPV) into evidence.

The jury convicted Milton of all but one of the charges, finding Milton guilty of four counts of rape, two counts of aggravated sodomy, and two counts of aggravated indecent liberties with a child. The trial court sentenced Milton to a total of 429 months' imprisonment with 36 months' postrelease supervision.

Milton appealed his convictions to this court, alleging various trial errors. On December 10, 2010, this court affirmed his convictions. Our Supreme Court denied review of Milton's direct appeal on February 15, 2011. See *State v. Milton*, No. 99,584, 2010 WL 5139871 (Kan. App. 2010) (unpublished opinion), *rev. denied* 291 Kan. 916 (2011).

On November 21, 2013, Milton filed a petition for writ of habeas corpus under K.S.A. 60-1507. In his pro se motion, Milton made many arguments why the trial court must reverse his conviction, including: his rights were violated because the State had dropped charges against him and then immediately refiled those charges; his civil rights had been violated because the State added the aggravated sodomy charges too close to the date of his trial; his videotaped police interview was played to the jury even though parts of the video were missing, which violates the best evidence rule; he knew two of the jury members; the transcripts from his trial had been altered; the State presented misleading evidence about HPV; and he was not allowed discovery to prepare his defense. Milton also alleged that Cahill provided ineffective assistance of counsel for the following reasons: Cahill failed to make reasonable investigations "because the case against [him] was extremely weak and the scientific HPV and physical evidence failed to support there was a rape;" Cahill allowed the State to admit an inflammatory letter into evidence; Cahill failed to object when he was not allowed to call witnesses to testify on his behalf; Cahill did not consult with him enough; and Cahill failed to obtain medical evidence that one of the girls was not sexually active. In his motion, Milton never addresses the fact that he had not filed his petition within 1 year of the termination of appellate jurisdiction as required under K.S.A. 60-1507(f)(1)(i).

The trial court found that Milton's arguments did not establish that manifest injustice would occur by enforcing the statute of limitations under K.S.A. 60-1507(f)(1)(i). Thus, the trial court dismissed Milton's motion as time barred. Milton timely appeals the dismissal of his K.S.A. 60-1507 motion.

4

Milton's appeal requires this court to interpret K.S.A. 60-1507(f). "An appellate court has unlimited review over the district court's interpretation of a statute." *Ludlow v. State*, 37 Kan. App. 2d 676, 682, 157 P.3d 631 (2007) (citing *Cooper v. Werholtz,* 277 Kan. 250, 252, 83 P.3d 1212 [2004]). Under K.S.A. 60-1507(f)(1)(i), any action brought under K.S.A. 60-1507 must be brought within 1 year of "[t]he final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction." This time limitation, however, "may be extended by the court only to prevent a manifest injustice." K.S.A. 60-1507(f)(2). This court has previously interpreted "manifest injustice" to mean "obviously unfair" or "shocking to the conscience." See *Ludlow*, 37 Kan. App. 2d at 686.

On appeal, Milton concedes that he did not timely file his K.S.A. 60-1507 motion because he filed his motion more than 2 years and 9 months after our Supreme Court denied review of his direct appeal. Nevertheless, Milton argues that the trial court erred in dismissing his motion because he has established that it would be manifestly unjust not to extend the time limitation of K.S.A. 60-1507(f)(1)(i).

In his brief, Milton argues that he established that it would be manifestly unjust to dismiss his motion as time barred based on his allegations that Cahill provided ineffective assistance of counsel. Milton states that he raises issues concerning Cahill's representation, "that if true, show that [Cahill] was potentially ineffective." Specifically, Milton argues that he established "manifest injustice" to allow an extension of the time limitation under K.S.A. 60-1507(f)(1)(i) because Cahill was ineffective for the following reasons: (1) Cahill failed to investigate his case; (2) the State's evidence was weak and "the 'HPV' and physical evidence" did not support that a rape occurred; (3) Cahill allowed the State to admit the inflammatory letter he had written to A.M.M. into evidence; (4) Cahill did not "appropriately act to call witnesses on [his] behalf;" (5) Cahill did not communicate with him; and (6) Cahill failed to obtain medical records that would have supported his defense. Milton's arguments, however, fail for two reasons.

5

First, all the arguments Milton raises on appeal are conclusory. Milton provides no evidence to support his arguments. In essence, Milton asks this court to accept his assertions about Cahill as facts which prove manifest injustice to extend the K.S.A. 60-1507(f)(1)(i) time limitation without providing the court with any evidence to support his assertions. "Conclusory contentions without evidentiary basis are not sufficient for relief." *Gilkey v. State*, 31 Kan. App. 2d 77, 82, 60 P.3d 351(2003) (citing *Burns v. State,* 215 Kan. 497, 500, 524 P.2d 737 [1974]). Accordingly, Milton has made conclusory arguments that do not entitle him to relief on appeal.

Second, under the totality of the circumstances, Milton has failed to establish manifest injustice to extend the 1-year time limitation in K.S.A. 60-1507(f)(1)(i). In *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), our Supreme Court held that a court conducting a manifest injustice inquiry under K.S.A. 60-1507(f)(1)(i) must consider the totality of the circumstances. Particularly, a court should consider whether

> "(1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.,* factual, not legal, innocence." *Vontress*, 299 Kan. at 616.

Here, Milton never provided the trial court or this court with persuasive reasons or circumstances that prevented him from filing his K.S.A. 60-1507 motion within the 1-year time limitation. In *Vontress*, our Supreme Court held that "a movant's failure to address other reasons why imposition of the 1-year time limitation is a manifest injustice is not necessarily fatal to the movant's claim." 299 Kan. at 617. Yet, the *Vontress* court further held that "because the burden is on the movant in a 60-1507 action, failing to plead excuses for the filing delay may result in a greater risk that the movant's claim will be dismissed as untimely." *Vontress*, 299 Kan. at 617. Thus, while Milton's failure to provide compelling reasons for the delay is not fatal, his failure to plead excuses is

something this court can consider in determining whether an extension to the 1-year time limitation under K.S.A. 60-1507(f)(1)(i) is necessary to prevent a manifest injustice under the totality of the circumstances. Moreover, Milton never sets forth a colorable claim of actual innocence.

In fact, the only arguments concerning manifest injustice Milton raises on appeal involve his allegations that Cahill provided ineffective assistance of counsel. Again, Milton states that he established that it would be manifestly unjust not to extend the K.S.A. 60-1507(f)(1)(i) time limitation because Cahill was ineffective for failing to investigate his case, allowing an inflammatory letter into evidence, not calling witnesses on his behalf, not communicating with him, failing to obtain certain medical records, and because the State's evidence was weak and the physical evidence and HPV test results did not support that a rape had occurred. Nevertheless, the record on appeal reveals that those allegations are baseless.

Regarding Milton's allegation that Cahill failed to investigate his case, the record establishes that Cahill took steps to investigate Milton's case. When Milton provided Cahill with names of potential witnesses 2 days before his trial, Cahill attempted to track down those witnesses. When Cahill was unable to locate all but one of the witnesses, Cahill asked for a continuance, which the trial court denied. Additionally, the one witness Cahill could reach was subpoenaed and testified at Milton's trial. Likewise, when Milton told Cahill that E.H.'s mother had told him that a doctor had examined E.H. and determined she was not sexually active, Cahill attempted to find this doctor so he could present this evidence at trial. As with the list of witnesses, Milton told Cahill about this potential evidence just 2 days before his trial. Thus, Cahill took steps to investigate Milton's case. Additionally, the steps Cahill took disprove Milton's allegation that Cahill did not call witnesses on his behalf and that Cahill failed to obtain medical records that would have supported his defense. From the record, it is clear that Cahill did what he could to contact witnesses and obtain this medical evidence given the very short notice.

7

Next, Cahill was not ineffective because the State's evidence was weak and the physical evidence and HPV test results did not support that a rape occurred. First, the State's evidence was not weak. The State's evidence included a videotaped confession made during the police interview and the letter where Milton confessed to A.M.M. Accordingly, the lack of physical evidence and the HPV results were effectively irrelevant because the State presented two separate confessions made by Milton. Furthermore, regarding the inflammatory letter, Milton told Cahill that he was going to testify and explain the letter. After the State admitted a redacted letter into evidence, Milton even insisted that the entire letter be admitted into evidence during A.M.M.'s testimony because he intended to testify about the entire letter. Once the letter was admitted into evidence, however, Milton refused to testify. Thus, Milton created this problem. Milton made the decision he was going to testify about the letter. As a result, Cahill allowed the State to enter the letter into evidence. Given that Milton created this problem by insisting that he would testify about the letter, he cannot allege that Cahill was ineffective for allowing the State to admit the letter into evidence.

Finally, Milton's allegation that Cahill was ineffective because Cahill failed to communicate with him is unfounded. Again, Cahill was appointed to represent Milton on April 11, 2007 and Milton's trial started May 21, 2007. In his K.S.A. 60-1507 motion, Milton asserts that Cahill only met with him three times before trial. Thus, it seems that Milton is angry because Cahill did not meet with him more times before trial. Yet, outside of his own assertion, nothing supports that Cahill met with Milton only three times before trial. Moreover, the fact that Cahill met with Milton only three times before trial does not prove that Cahill provided ineffective assistance of counsel. In fact, it proves that Cahill was communicating with Milton. Accordingly, Milton's allegation that Cahill was ineffective because he failed to communicate with him is unfounded.

As a result, although Milton argues that he established that it would be manifestly unjust to dismiss his motion as time barred because Cahill provided ineffective assistance

of counsel, all of his arguments why Cahill provided ineffective assistance of counsel are baseless. Consequently, in addition to making conclusory arguments, Milton has failed to prove manifest injustice to extend the 1-year time limitation under the totality of the circumstances of this case. Because Milton failed to prove a manifest injustice to extend the 1-year time limitation, we affirm the trial court's dismissal of his K.S.A. 60-1507 motion as time barred.

Affirmed.