NOT DESIGNATED FOR PUBLICATION

No. 118,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL VANDERPOOL SR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed February 7, 2020. Affirmed.

*Rebecca A. Hamilton*, of Kansas City, Missouri, for appellant.

*David Greenwald*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., GREEN and MALONE, JJ.


PER CURIAM: Michael Vanderpool Sr. appeals the trial court's denial of his K.S.A. 60-1507 motion, in which he alleged ineffective assistance of trial counsel. Nevertheless, Vanderpool has not established that he is entitled to relief under K.S.A. 60-1507. Therefore, we affirm the trial court.

*Background*

After a jury convicted Vanderpool of four counts of rape and eight counts of aggravated criminal sodomy, the trial court sentenced Vanderpool to a controlling sentence of 326 months' imprisonment followed by 36 months' postrelease supervision. The victim of Vanderpool's crimes was Vanderpool's girlfriend's minor child; both Vanderpool's girlfriend and her children lived with Vanderpool and some of his children. Vanderpool filed a direct appeal with this court, but this court affirmed. *State v. Vanderpool*, No. 100,552, 2009 WL 3737333 (Kan. App. 2009) (unpublished opinion), *rev. denied* 290 Kan. 1104 (2010).

On June 23, 2011, Vanderpool moved for relief under K.S.A. 60-1507, arguing that his trial counsel was ineffective. In his motion, Vanderpool alleged that his trial counsel provided ineffective assistance of counsel in the following way: (1) not introducing expert testimony to rebut the State's expert testimony about the victim's physical examination and emotional state; (2) not introducing the testimony of his children to establish that he treated the victim the same as his children and never abused the victim; and (3) not introducing "testimony from certain eyewitnesses who could have rebutted the account of the State's witnesses."

Eventually, the trial court appointed counsel to represent Vanderpool on his K.S.A. 60-1507 motion. Habeas counsel filed an additional K.S.A. 60-1507, alleging that trial counsel did not fully investigate Vanderpool's case before creating Vanderpool's defense.

The trial court held an evidentiary hearing on Vanderpool's motion on October 23 and 24, 2014. At the hearing, Vanderpool's now-adult children, a defense attorney who Vanderpool hired as an expert, and a clinical psychologist who reviewed the victim's forensic interview, testified on his behalf. Vanderpool also testified on his own behalf.

Vanderpool's children testified that they never saw any sexual abuse occur. Of note, only one of the four children testified that she lived full time with Vanderpool when the alleged abuse occurred. The defense attorney testified he believed that trial counsel could have presented evidence from Vanderpool's children because it would have established that Vanderpool had "little, if any, opportunity" to commit the abuse. The defense attorney explained that it would be important to cross-examine Vanderpool's ex-girlfriend if she made inconsistent statements about believing her daughter's sexual abuse allegations. But the defense attorney admitted that there may have been strategic reasons why trial counsel made certain decisions. The clinical psychologist testified that during the victim's interview with the Sunflower House, the interviewer asked some leading questions about where and how the sexual abuse occurred.

In essence, Vanderpool repeated the complaints within his K.S.A. 60-1507 motion. He complained that his trial counsel did not have his children testify. He complained that his trial counsel did not better explore the victim's emotional issues. And he complained that his trial counsel did not cross-examine the victim and his ex-girlfriend on inconsistent, implausible, or false statements.

Vanderpool's trial counsel testified on behalf of the State. Summarized, trial counsel testified that he billed between 100 to 150 hours of work in Vanderpool's case. He explained that he was unsure how many hours he actually worked because he did not bill Vanderpool for all of his work. He also testified that he formulated a negative defense, which focused on arguing that the State did not meet its burden of proof.

At the end of the hearing, the trial court took the parties' arguments under advisement. It then issued an order denying Vanderpool's K.S.A. 60-1507 motion. The trial court agreed with the State's argument that Vanderpool's trial counsel did not provide

3

ineffective assistance of counsel. In explaining its decision, the trial court held the following:

> "After a careful examination of the transcript, it is the finding of this Court that the motion must fail to all claims. It is clear that certain testimony might have been emphasized in a different or perhaps a more intensive manner, but it is clear that the focus of the defense, from the beginning to the end of the trial was to put the State to their burden of proof. The transcript is clear that trial counsel followed through on that strategy. His examination of witnesses, and his decision to not call certain witnesses, fed into his approach that the [S]tate had not brought this information forward and thus did not prove their case. . . . While this might not be the only approach, this Court does not find this to be ineffective. The Court also considered the testimony that [trial] counsel was ineffective in not challenging the interview of the alleged victim at the [the forensic interview]. In all candor, this Court found the testimony of the [State's forensic interviewer] to be less than persuasive. The Court notes that the position of [trial counsel] was more reasonable, in that the [victim's] statement [during the forensic interview] clearly provided [a] strong argument that the version of the victim was weak and should be disregarded. . . . Taken in totality, this Court finds that the trial testimony does not support that the performance of [trial counsel] fell below a standard of reasonableness."

Vanderpool did not timely appeal the denial of his K.S.A. 60-1507 motion. But while retaining jurisdiction, this court remanded to the trial court to determine whether habeas counsel provided ineffective assistance of counsel by not timely filing Vanderpool's appeal. See *Vanderpool v. State*, No. 118,949, 2019 WL 4383313 (Kan. App. 2019) (unpublished opinion). Following a hearing in accordance with *Albright v. State*, 292 Kan. 193, Syl. ¶ 5, 251 P.3d 52 (2011), the trial court held that habeas counsel was ineffective for failing to timely appeal from the adverse decision despite Vanderpool's known desire to appeal. Thus, this court now has jurisdiction to consider the merits of Vanderpool's argument under *Albright*.

Although this court provided Vanderpool's new counsel opportunity to submit supplemental briefing, Vanderpool's new counsel declined to do so. Accordingly, we now consider the merits of Vanderpool's brief submitted by habeas counsel.

*Did the Trial Court Err by Denying Vanderpool's K.S.A. 60-1507 Motion?*

When the trial court denies a K.S.A. 60-1507 motion after a full evidentiary hearing, an appellate court uses a bifurcated standard of review. We review the trial court's factual findings for substantial competent evidence. But we review the trial court's legal conclusions de novo. See *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

When a K.S.A. 60-1507 movant alleges ineffective assistance of counsel, the movant must satisfy the two-prong test under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984): First, the movant must establish that counsel's representation was deficient under the totality of the circumstances. Second, the movant must establish that he or she suffered prejudice. This means that but for counsel's deficient performance, the jury would have reached a different verdict. See also *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland*, 466 U.S. at 687).

In his appellate brief, Vanderpool makes 27 claims of ineffective assistance of counsel. He contends that his trial counsel did not investigate his case before trial. He contends that his trial counsel never addressed the victim's forensic interview. But most of Vanderpool's contentions concern his trial counsel's failure to call certain witnesses, as well as challenge the inconsistent and implausible statements of certain witnesses. Specifically, he complains about his trial counsel's failure to challenge implausible and inconsistent testimony by his ex-girlfriend (and the victim's mother), the victim, and the victim's grandmother. Vanderpool also takes issue with his trial counsel's failure to challenge the State's assertion that the victim reported the abuse after a triggering event,

5

during which she encountered Vanderpool for the first time in over a year. According to Vanderpool, this assertion was false because he saw the victim all the time despite being separated from her mother.

Nevertheless, the record on appeal establishes that trial counsel provided Vanderpool with an adequate defense. Trial counsel's strategy for Vanderpool's case was a negative defense, emphasizing the State's burden of proof. Trial counsel stressed that because Vanderpool lived with the victim, the defense could not establish that Vanderpool never spent time alone with the victim. In short, at Vanderpool's trial, trial counsel asked the jury to consider the quality of the State's evidence against Vanderpool.

For example, in closing arguments, trial counsel challenged the victim's inconsistent statements and implausible accusations, pointing to her forensic interview. Then, he challenged Vanderpool's ex-girlfriend's inconsistent statements while also noting Vanderpool's ex-girlfriend's disdain for Vanderpool. Trial counsel also questioned why the State never called experts to talk about the victim's emotional state or veracity of the victim's allegations. Then, trial counsel alleged that the police did very little investigation to support its case against Vanderpool. Based on the police's minimal investigation, trial counsel asserted that the jury could never know what actually happened between Vanderpool and the victim.

Also, at the evidentiary hearing on Vanderpool's K.S.A. 60-1507 motion, trial counsel explained his trial strategy. Trial counsel explained that he believed a negative defense was Vanderpool's best option because Vanderpool had no alibi. He explained that in the past when his clients had no alibi, he has had the most success by using a negative defense. He stressed that because Vanderpool lived with the victim, the defense could not establish that Vanderpool never spent time alone with the victim. Accordingly, he testified that he did not believe it was necessary to call other witnesses, like Vanderpool's children, because it was uncontested that Vanderpool spent time alone with the victim.

6

He further testified that Vanderpool's children could only say that they never witnessed any sexual abuse, which would not definitively establish that the abuse never happened.

Next, trial counsel explained that he did not hire his own medical expert to challenge the victim's medical evaluation because he believed that this evaluation also helped Vanderpool's defense; the State's medical expert testified that the victim presented no physical evidence of sexual contact. Trial counsel then explained that he did not challenge the admission of the victim's forensic interview for the same reason; that is, he believed that the victim's inconsistent and implausible statements during that interview helped Vanderpool's defense.

Thus, trial counsel had a well-developed trial plan that rested on a negative defense. This negative defense questioned whether the State had met its burden of proof. By choosing a negative defense, trial counsel's testimony established that he considered other defense options, like an affirmative defense. Yet, after examining Vanderpool's case, trial counsel made a strategic decision to present a negative defense. Vanderpool's arguments ignore his trial counsel's chosen negative defense trial strategy. Vanderpool's arguments hinge on his belief that trial counsel should have presented more evidence on his behalf, but trial counsel's strategy hinged on a lack of evidence.

When reviewing ineffective assistance of counsel claims, courts must strongly presume that counsel's performance fell within the broad range of reasonable assistance of counsel. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). Moreover, we will not find ineffective assistance of counsel when counsel has made a strategic decision following a thorough investigation. See *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013). Here, the evidence supports that trial counsel engaged in a thorough investigation before settling on his negative defense strategy. Accordingly, we hold that trial counsel provided effective assistance of counsel.

Notwithstanding the preceding, we note that Vanderpool never explains how trial counsel's alleged mistakes changed the jury's verdict. Instead, Vanderpool simply complains about what he believed his trial counsel should have done. So, even if we assumed for argument's sake that trial counsel provided deficient performance, Vanderpool cannot establish that trial counsel's performance prejudiced his defense.

Last, we also note that Vanderpool's accusations constitute conclusory conjecture. For instance, Vanderpool contends that his trial counsel did not more vigorously advocate his case because he had "developed strong ties with child advocates whose primary goal was to protect children . . . ." And he argues that his trial counsel was "going through the motions of presenting a defense, but his heart [was not] in it. [His trial counsel] just want[ed] it to be over with so he [could] move on to other things." But nothing in the record supports these allegations. Indeed, Vanderpool never cites to the record in his analysis, but merely asserts that trial counsel erred in 27 distinct ways without any evidentiary backing. "Conclusory contentions without evidentiary basis are not sufficient for relief." *Gilkey v. State*, 31 Kan. App. 2d 77, 82, 60 P.3d 351 (2003). We thus reject Vanderpool's arguments for this reason, too.

Affirmed.